# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

**ROBERT ERNIE ROBLE,**

    **Plaintiff,**

    vs.                                                                  Civ. No. 17-906 SCY

**NANCY A. BERRYHILL, Acting
Commissioner of the Social Security
Administration,**

    **Defendant.**

## MEMORANDUM OPINION AND ORDER[1]

**THIS MATTER** is before the Court on the Social Security Administrative Record (Doc. 13) filed January 2, 2018, in support of Plaintiff Robert Ernie Roble's ("Plaintiff") Complaint (Doc. 1) seeking review of the decision of Defendant Nancy A. Berryhill, Acting Commissioner of the Social Security Administration, ("Defendant" or "Commissioner") partially granting Plaintiff's claims for Title II disability insurance benefits and Title XVI supplemental security income. On March 28, 2018, Plaintiff filed his Motion to Reverse and Remand for Rehearing With Supporting Memorandum ("Motion"). Doc. 20. The Commissioner filed a Response in opposition on May 23, 2018 (Doc. 22), and Plaintiff filed a Reply on June 11, 2018. Doc. 23. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c). Having meticulously reviewed the entire record and the applicable law and being fully advised in the premises, the Court finds the Motion is well taken and is **GRANTED.**

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings, and to enter an order of judgment, in this case. (Docs. 7, 8, 10.)

## I. Background and Procedural Record

Claimant Robert Ernie Roble ("Mr. Roble") alleges that he became disabled on June 22, 2011, at the age of forty-eight because of post-traumatic stress syndrome and kidney stones. Tr. 255, 259.[2] Mr. Roble has four or more years of college, and was self-employed in maintenance and pest control. Tr. 260, 276-85.

On December 19, 2012, Mr. Roble filed an application for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 *et seq*. Tr. 230-31. On June 3, 2013, he filed an application for Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. § 1381 *et seq*. Tr. 232-37. Mr. Roble's applications were initially denied on September 23, 2013. Tr. 97, 98, 99-115, 116-133, 163-66, 167-70. They were denied again at reconsideration on May 30, 2014. Tr. 134, 135, 136-47, 148-58, 173-75, 176-79. Mr. Roble requested a hearing before an Administrative Law Judge ("ALJ"), and ALJ Lillian Richter conducted a hearing on January 28, 2016. Tr. 44-96. Mr. Roble appeared in person at the hearing with attorney representative Michael Armstrong. *Id*. The ALJ took testimony from Mr. Roble, Geraldine Roble, and an impartial vocational expert ("VE"), Karen Provine. *Id.* On March 24, 2016, ALJ Richter issued a partially favorable decision. Tr. 19-35.

On July 15, 2017, the Appeals Council issued its decision denying Mr. Roble's request for review and upholding the ALJ's final decision. Tr. 1-5. On September 1, 2017, Mr. Roble timely filed a Complaint seeking judicial review of the Commissioner's final decision. Doc. 1.

---

[2] Citations to "Tr." are to the Transcript of the Administrative Record (Doc. 13) that was lodged with the Court on January 2, 2018.

## II. Applicable Law

### A. Disability Determination Process

An individual is considered disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (pertaining to disability insurance benefits); *see also* 42 U.S.C. § 1382(a)(3)(A) (pertaining to supplemental security income disability benefits for adult individuals). The Social Security Commissioner has adopted the familiar five-step sequential analysis to determine whether a person satisfies the statutory criteria as follows:

(1) At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."[3] If the claimant is engaged in substantial gainful activity, he is not disabled regardless of his medical condition.

(2) At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s). If the claimant does not have an impairment(s) or combination of impairments that is severe and meets the duration requirement, he is not disabled.

(3) At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement. If so, a claimant is presumed disabled.

(4) If, however, the claimant's impairments do not meet or equal in severity one of the listing described in Appendix 1 of the regulations, the ALJ must determine at step four whether the claimant can perform his "past relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [claimant] can still do despite [his physical and mental] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). This is called the claimant's

---

[3] Substantial work activity is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). Work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before. *Id.* Gainful work activity is work activity that you do for pay or profit. 20 C.F.R. §§ 404.1572(b), 416.972(b).

residual functional capacity ("RFC"). *Id.* §§ 404.1545(a)(3), 416.945(a)(3). Second, the ALJ determines the physical and mental demands of claimant's past work. Third, the ALJ determines whether, given claimant's RFC, the claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled.

(5) If the claimant does not have the RFC to perform his past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 404.1520(a)(4) (disability insurance benefits); 20 C.F.R. § 416.920(a)(4) (supplemental security income disability benefits); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5, 107 S.Ct. 2287, 2294, n. 5, 96 L.Ed.2d 119 (1987). The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Serv.*, 933 F.2d 799, 801 (10th Cir. 1991).

B. **Standard of Review**

This Court must affirm the Commissioner's denial of social security benefits unless (1) the decision is not supported by "substantial evidence" or (2) the ALJ did not apply the proper legal standards in reaching the decision. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Casias,* 933 F.2d at 800-01. In making these determinations, the Court "neither reweigh[s] the evidence nor substitute[s] [its] judgment for that of the agency.'" *Bowman v. Astrue*, 511 F.3d

1270, 1272 (10th Cir. 2008). A decision is based on substantial evidence where it is supported by "relevant evidence . . . a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record[,]" *Langley,* 373 F.3d at 1118, or "constitutes mere conclusion." *Musgrave v. Sullivan,* 966 F.2d 1371, 1374 (10th Cir. 1992). The agency decision must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005). Therefore, although an ALJ is not required to discuss every piece of evidence, "the record must demonstrate that the ALJ considered all of the evidence," and "the [ALJ's] reasons for finding a claimant not disabled" must be "articulated with sufficient particularity." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996).

### III. Analysis

The ALJ determined that Mr. Roble was not disabled prior to August 30, 2013, but became disabled on that date and has continued to be disabled through the date of her decision. Tr. 24. In making this determination, the ALJ found at step one that Mr. Roble met the insured status requirements through March 31, 2012, and that he had not engaged in substantial gainful activity since his alleged onset date. Tr. 26. At step two, the ALJ found that since his alleged onset date, Mr. Roble had severe impairments of mood disorder, major depressive disorder, post-traumatic stress disorder, anxiety, traumatic brain injury, and rule out cognitive disorder. Tr. 26. She also found nonsevere impairments of obesity, cataract, hypertension, and alcohol use disorder. Tr. 27. The ALJ, however, determined that Mr. Roble's impairments did not meet or equal in severity one the listings described in Appendix 1 of the regulations. Tr. 27. As a result, the ALJ proceeded to step four and found that, prior to August 30, 2013, Mr. Roble had the

5

residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations:

> he was limited to performing simple, routine, and repetitive work; should not have worked in close proximity to others in order to avoid distractions; could have occasional contact with coworkers and supervisors; could have incidental contact with the public; was limited to hearing and understanding simple oral instructions; was limited to a workplace with few changes in the routine work settings; and was limited to making simple work-related decisions.

Tr. 28. The ALJ determined that beginning on August 30, 2013, Mr. Roble had an additional nonexertional limitation of needing "frequent reminders from supervisors in order to remain on task." Tr. 30. The ALJ concluded at step four that Mr. Roble was not able to perform any past relevant work. Tr. 33. At step five, the ALJ determined that prior to August 30, 2013, based on Mr. Roble's age, education, work experience, RFC, and the testimony of the VE, there were jobs that existed in significant numbers in the national economy that Mr. Roble could perform and was, therefore, not disabled. Tr. 33-34. Beginning on August 30, 2013, however, based on Mr. Roble's age, education, work experience, RFC, and the testimony of the VE, the ALJ determined there were no jobs that existed in significant numbers in the national economy that Mr. Roble could perform and that he was, therefore, disabled as of that date.

Mr. Roble asserts two arguments in support of his Motion as follows: (1) the Appeals Council failed to properly analyze the opinion of consultative psychologist Louis Wynne, Ph.D. whose opinion undercuts ALJ Richter's decision; and (2) ALJ Richter failed to properly evaluate Mr. Roble's description of his symptoms in accordance with SSR 16-3p or SSR 96-7p. Doc. 20 at 16-24. Because the Appeals Council failed to consider Dr. Wynne's opinion, the case will be remanded so that the Appeals Council may reevaluate the ALJ's decision in light of the completed record.

A.      **Consideration of Additional Evidence**

On July 8, 2016, Louis Wynne, Ph.D., prepared a psychological evaluation, and completed a *Medical Assessment of Ability To Do Work-Related Activities (Mental)* and three listings forms on Mr. Roble's behalf.[4]  Tr. 9-16.  On July 11, 2016, Mr. Roble submitted the additional evidence to the Appeals Council.  Tr. 8-15.  The Appeals Council denied review of the additional evidence explaining that

> [y]ou submitted a medical source statement dated July 8, 2016 from Louis Wynne, PhD (8 pages).  We find this evidence does not show a reasonable probability that it would change the outcome of the decision.  We did not consider and exhibit this evidence.

Tr. 2.

Dr. Wynne explained in his psychological evaluation that he

> examined Mr. Roble on June 14 and 17[, 2016,] for the purpose of clarifying the extent of impairment suffered between June 20, 2011, when he was severely beaten, and my first examination of him on August 30, 2013.  His wife Geraldine accompanied him throughout these two sessions and it should be noted that she had not accompanied him during the examination in August 2013.  Hence I was able to obtain a much more detailed account of Mr. Roble's conduct following the beating.  I also administered a mental status examination again and found that his level of intellectual functioning has deteriorated even further.

Tr. 9.  Dr. Wynne's psychological evaluation discussed Mr. Roble's pertinent histories, the information he obtained from Mr. Roble's wife about Mr. Roble's mood and behavior following the June 20, 2011, assault, and possible diagnoses.  Dr. Wynne concluded that

> [g]iven these observations as well as his performance on the mental status examination, it is my professional opinion that Mr. Roble's diagnosis (DSM 5) is F02.81, Major neurocognitive disorder including intellectual impairment, emotional lability, and psychotic symptoms due to head injuries.  Further, that he has been disabled starting from the time of the altercation and head injuries in June 2011.

---

[4] Dr. Wynne had previously conducted a Disability Determination Examination of Mr. Roble on August 30, 2013, on behalf of the Social Security Administration.  Tr. 522-25.

7

Tr. 10.

In completing the *Medical Assessment of Ability To Do Work-Related Activities (Mental)*, the instructions directed Dr. Wynne to consider Mr. Roble's "medical history and the chronicity of findings as *from June 2011*." Tr. 11-12. In doing so, Dr. Wynne assessed that Mr. Roble had *moderate limitations* in his ability to (1) understand and remember very short and simple instructions; (2) carry out very short and simple instructions; (3) ask simple questions or request assistance; and (4) maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness. *Id.* Dr. Wynne also assessed that Mr. Roble had *marked limitations* in ability to (1) remember locations and work-like procedures; (2) understand and remember detailed instructions; (3) carry out detailed instructions; (4) maintain attention and concentration for extended periods of time (*i.e.* 2-hours segments); (5) perform activities within a schedule, maintain regular attendance and be punctual within customary tolerance; (6) sustain an ordinary routine without special supervision; (7) work in coordination with/or proximity to others without being distracted by them; (8) make simple work-related decisions; (9) complete a normal workday and workweek without interruptions from psychological based symptoms and to perform at a consistent pace without unreasonable number and length of rest periods; (10) interact appropriately with the general public; (11) accept instructions and respond appropriately to criticism from supervisors; (12) get along with coworkers or peers without distracting them or exhibiting behavioral extremes; (13) respond appropriately to changes in the work place; (14) be aware of normal hazards and take adequate precautions; (15) travel in unfamiliar places or use public transportation; (16) set realistic goals or make plans independently of others. *Id.*

Finally, Dr. Wynne completed three listings forms that indicated Mr. Roble met the A, B and C criteria for 12.04 *Affective Disorder*, 12.06 *Anxiety-Related Disorders*, and 12.02 *Organic Mental Disorders (Hepatic Encephalopathy)*. Tr. 13-15.

Mr. Roble argues that the Appeals Council improperly determined that the additional submitted evidence was not material. Doc. 20 at 16-21. Mr. Roble asserts that the additional evidence is material because it raises a question as to whether ALJ Richter's decision is supported by substantial evidence because it points to functional limitations that could reasonably change the outcome of the ALJ's determination. *Id.* The Commissioner contends that Mr. Roble's argument is misplaced because, under current regulations, the Appeals Council will review a case based on additional evidence only if, in addition to meeting other requirements, there is a reasonable probability that it would change the outcome of the decision. Doc. 22 at 13-14. The Commissioner contends that Mr. Roble failed to demonstrate a reasonable probability that the additional evidence would change the outcome of the decision. *Id.* at 14. The Commissioner adds that, even if the additional evidence were considered, Dr. Wynne opined in his psychological evaluation on an issue reserved to the Commissioner; *i.e.,* that Mr. Roble was disabled since June 2011, and that Dr. Wynne used check-the-box-forms which, without more, are not highly probative of Mr. Roble's condition in 2011 and 2012. *Id.* at 15. As such, the Commissioner contends that the ALJ's decision remains supported by substantial evidence. *Id.* at 15-16.

The question before the Court, therefore, is whether the Appeals Council should have considered the additional evidence in Mr. Roble's request for review. Whether evidence qualifies for consideration by the Appeals Council is a question of law subject to *de novo* review. *Krauser v. Astrue*, 638 F.3d 1324, 1328 (10th Cir. 2011) (citing *Threet v. Barnhart*, 353 F.3d

9

1185, 1191 (10th Cir. 2003)). "[O]ur general rule of *de novo* review permits us to resolve the matter and remand if the Appeals Council erroneously rejected the evidence." *Krauser*, 638 F.3d at 1328 (citing *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004)).

Additional evidence should be considered only if it is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision. 20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5).[5] Evidence is new "if it is not duplicative or cumulative" and is material "if there is a reasonable possibility that it would have changed the outcome." *Threet,* 353 F.3d at 1191. Evidence is chronologically pertinent if it relates to the time period adjudicated by the ALJ; *i.e.,* the period on or before the date of the ALJ's decision. *Chambers*, 389 F.3d at 1142.

> If the evidence does not qualify, it plays no further role in judicial review of the Commissioner's decision. If the evidence does qualify and the Appeals Council considered it "in connection with the claimant's request for administrative review (regardless of whether review was ultimately denied), it becomes part of the record we assess in evaluating the Commissioner's denial of benefits under the substantial-evidence standard." Finally, if the evidence qualifies but the Appeals Council did not consider it, the case should be remanded for further proceedings.

*Chambers*, 389 F.3d at 1142 (quoting *O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir. 1994)). The Court addresses all three criteria as part of its *de novo* review.

---

[5] This regulation changed effective January 17, 2017, with compliance not required until May 1, 2017. *See* 81 FR 90987-01, 2016 WL 7242991 (F.R.) (Ensuring Program Uniformity at the Hearing and Appeals Council Levels of the Administrative Review Process). The changed regulation added, *inter alia,* the requirement that additional evidence should be considered if "there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5). The changed regulation also added that the Appeals Council will only consider additional evidence "if you show good cause for not informing us about or submitting the evidence as described in § 404.935[(Submitting written evidence to an administrative law judge).]" *Id.* Neither the requirement to provide evidence suggesting a reasonable probability of changing the outcome of the ALJ's decision nor the good cause requirement were in existence at the January 28, 2016, hearing in this case, or at the time Mr. Roble submitted his additional evidence. During that time frame, the regulations required the Appeals Council to consider new and material evidence submitted if it related to the period on or before the date of the hearing decision, to evaluate the entire record including new and material evidence submitted, and to review the case if it found that the decision at issue is contrary to the weight of the evidence in the record, including the new evidence. 20 C.F.R. §§ 404.970, 416.1470 (2015). The parties have not raised or briefed the issue of whether the current regulation retroactively applies here.

The additional evidence is new because it is not duplicative or cumulative. Dr. Wynne's psychological evaluation, *Medical Assessment of Ability To Do Work-Related Activities (Mental)*, and listing forms were not available to the ALJ at the time she made her decision. As such, the evidence is not duplicative. Additionally, Dr. Wynne is the only examining acceptable medical source[6] who assessed Mr. Roble's ability to do work-related mental activities as from his alleged onset date.[7] As such, the evidence is not cumulative.

The additional evidence is material and creates a reasonable possibility that the outcome of the case would change.[8] At issue in this case is whether the ALJ improperly determined that Mr. Roble was not disabled prior to August 30, 2013. The additional evidence directly addresses this issue. There is no dispute that the medical evidence of record shows that Mr. Roble was assaulted in June 2011 and suffered a traumatic brain injury, PTSD, depression, and anxiety as a

---

[6] For claims filed before March 27, 2017, "acceptable medical sources" are licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. SSR 06-03p, 2006 WL 2329939, at *1; SSR 96-2p, 2017 WL 3928298.

[7] On October 3, 2014, and December 24, 2015, LISW Tracy Walker, an other medical source, completed two Medical Assessments of Ability To Do Work-Related Activities (Mental) on Mr. Roble's behalf "from a year prior to initial visit to current examination." Tr. 617-18, 952-53. LISW Walker first saw Mr. Roble on July 31, 2012. Tr. 383-84. Thus, her assessment considered Mr. Roble's medical history as from June 2011. *Id.* The ALJ accorded LISW Walker's assessments some weight. Tr. 32. LISW Walker's assessments were consistent with Dr. Wynne's. *Compare* Tr. 9-10 with Tr. 617-18, 952-53.

On September 19, 2013, State agency nonexamining psychological consultant Donald Gucker, Ph.D., reviewed Mr. Roble's medical record evidence and assessed certain Section I moderate limitations. Tr. 110-12, 127-29. Dr. Gucker concluded in Section III that "[a]ll considered, and based on mental issues only, when treatment compliant, claimant retains the capacity to understand, remember, and carry out simple instructions, attend and concentrate sufficient to complete a routine work day without significant interruptions from psychologically-based symptoms; exercise reasonable judgment; interact appropriately with coworkers; supervisors and the general public on an incidental basis." *Id.* On May 20, 2014, Dr. Wewerka affirmed Dr. Gucker's decision. Tr. 142, 154. The ALJ accorded the State agency nonexamining psychological consultant opinions limited weight because "these experts appear to have given little serious consideration to the nonmedical factors contained in 20 CFR 404.1529(c)(3)/416.929(c)(3)." Indeed, the ALJ clearly rejected their opinions when she determined that Mr. Roble was disabled as of August 30, 2013.

[8] The standard under Tenth Circuit case law for materiality is whether there is a reasonable *possibility* that additional evidence would have changed the outcome of the case. *Threet*, 353 F.3d at 1191. That being said, even if the current regulation were to apply and Ms. Casas had to demonstrate a reasonable *probability* that the additional evidence would have changed the outcome of the decision, *see* fn. 5 *supra*, the probability standard is met here.

result. Tr. 29. And the Commissioner acknowledges that Dr. Wynne indicated in his July 8, 2016, psychological report that he re-examined Mr. Roble for the purpose of clarifying the extent of Mr. Roble's impairment in June 2011. Doc. 22 at 14. In fact, Dr. Wynne explained the basis of his new assessment, which included, *inter alia*, having obtained a more detailed account of Mr. Roble's mood and behavior following the June 20, 2011, assault. Tr. 9-10. To that end, on July 8, 2016, Dr. Wynne prepared a new assessment of Mr. Roble's ability to do work-related mental activities *as from June 2011* that clearly calls into question the ALJ's RFC assessment prior to August 30, 2013, because, if adopted, it would impose greater limitations on Mr. Roble's ability to do work-related mental activities prior to that date.[9] Tr. 31. Moreover, Dr. Wynne's new assessment is consistent with Mr. Roble's long-term primary mental health provider opinions, LISW Walker and LISW Bussey, both of whom assessed Mr. Roble with marked limitations in several areas of vocational functioning prior to August 30, 2013.[10] Tr. 32.

---

[9] The ALJ relied on Dr. Wynne's August 30, 2013, opinion to make her determination that Mr. Roble was disabled as of that date. Tr. 31. The ALJ accorded Dr. Wynne's August 30, 2013, assessment significant weight. *Id.* She explained that his assessment was supported by his objective findings and was consistent with Mr. Roble's treatment records. *Id.*

[10] LISW Walker provided individual and group therapy to Mr. Roble from July 31, 2012, through September 4, 2013, related to Mr. Roble's major depressive disorder, mood disorder, and PTSD. Tr. 383-84, 396-407, 411-46, 451-64. LISW Walker saw Mr. Roble thirty-two times during that time. *Id.* LISW Walker left Presbyterian Medical Services and Mr. Roble began treating with LISW Gregory Bussey from October 10, 2013, through December 1, 2015. Tr. 474-76, 487-88, 491-92, 497-500, 505-10, 517-20, 833-34, 838-39, 850-51, 857-58, 864-69, 875-87, 888-919, 923-39. LISW Bussey saw Mr. Roble forty-five times during that time. On April 2, 2015, LISW Walker began treating Mr. Roble again through Finding Wellness, LLC. Tr. 941-44.

On October 3, 2014, LISW Walker assessed as from a year prior to initial visit to current examination that Mr. Roble had marked limitations in his ability to (1) remember locations and work-like procedures; (2) understand and remember detailed instructions; (3) carry out detailed instructions; (4) maintain attention and concentration for extended periods of time (*i.e.,* 2- hour segments); (5) perform activities within a schedule, maintain regular attendance and be punctual within customary tolerance; (6) sustain an ordinary routine without special supervision; (7) work in coordination with/or proximity to others without being distracted by them; (8) make simple work-related decisions; (9) complete a normal workday an workweek without interruptions from psychological based symptoms and to perform at a consistent pace without unreasonable number and length of rest periods; (10) interact appropriately with the general public; (11) ask simple questions or request assistance; (12) accept instructions and respond appropriately to criticism from supervisors; (13) get along with coworkers or peers without distracting them or exhibiting behavioral extremes; (14) maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; (15) respond appropriately to changes in the work place; (16) be aware of normal hazards and take adequate precautions; and (17) travel in unfamiliar places or use public transportation. Tr. 617-18.

Although the ALJ explained that their assessments were not consistent with the medical evidence of record (Tr. 32), if Dr. Wynne's July 8, 2016, assessment is also considered, the record changes, and their assessments are consistent with Dr. Wynne's.

Finally, the additional evidence relates to the period at issue. It is undisputed that the date on which Dr. Wynne completed psychological evaluation and the *Medical Assessment of Ability To Do Work-Related Activities (Mental)* post-date the ALJ's decision. However, the additional evidence makes a direct reference to the time period adjudicated by the ALJ; *i.e.,* as from June 2011.[11] (*Id.*) *See* HALLEX I-3-3-6(B) (noting that there are circumstances when evidence dated after the ALJ decision relates to the period at issue, such as when a statement makes a direct reference to the time period adjudicated).

Lastly, the Commissioner argues that even if the Court were to find that the additional evidence should have been considered, it would not undermine the ALJ's decision. Doc. 22 at 15-16. However, in this case, the Appeals Council *did not accept or consider* the new evidence in denying Mr. Roble's request to review the ALJ's decision. Thus, the only question before the Court is whether the Appeals Council should have done so. *Padilla v. Colvin*, 525 F. App'x 710, 712, n. 1 (10th Cir. 2013) (distinguishing the questions before the court when the Appeals

---

On December 24, 2015, LISW Walker made the same assessment, but added that Mr. Roble also had marked limitations in his ability to (1) understand and remember very short and simple instructions; and (2) carry out very short and simple instructions. Tr. 952-53.

On December 24, 2015, LISW Gregory Bussey assessed as from a year prior to initial visit to current examination that Mr. Roble had marked limitations in his ability to (1) maintain attention and concentration for extended periods of time (*i.e.,* 2- hour segments); (2) sustain an ordinary routine without special supervision; (3) work in coordination with/or proximity to others without being distracted by them; (4) accept instructions and respond appropriately to criticism from supervisors; (5) get along with coworkers or peers without distracting them or exhibiting behavioral extremes; (6) respond appropriately to changes in the work place; (7) travel in unfamiliar places or use public transportation; and (8) set realistic goals or make plans independently of others. Tr. 947-48.

[11] The adjudicated period is June 22, 2011, the alleged onset date, through March 24, 2016, the date of the ALJ's determination.

Council rejects and does not consider additional evidence in denying review and when the Appeals Council accepts and considers evidence in denying review). As such, it would be improper for this Court to perform a substantial evidence review of the ALJ's decision by evaluating new evidence that was not considered below.

For the foregoing reasons, the Court finds that the additional evidence from Louis Wynne, Ph.D., is new, material and, chronologically pertinent.[12] As such, the Appeals Council erroneously failed to consider it as part of Mr. Roble's request for review. Therefore, this case must be remanded for the Appeals Council to review the new evidence as required under 20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5). *Krauser*, 638 F.3d at 1328.

### B. Remaining Issues

The Court will not address Mr. Roble's remaining claim of error because it may be affected by the ALJ's treatment of this case on remand. *Wilson v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

### IV. Conclusion

For the reasons stated above, Mr. Roble's Motion to Reverse and Remand for Rehearing With Supporting Memorandum (Doc. 20) is **GRANTED.**

_____
**STEVEN C. YARBROUGH**
**United States Magistrate Judge,**
**Presiding by Consent**

---

[12] *See* fn. 8, *supra.*